UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALAINA      TROCANO,      an
individual,

       Plaintiff,

v.                              Case No: 2:23-cv-645-JES-KCD

MICHAEL     VIVALDI,     an
individual  and  AMERICAN
AIRLINES,  INC.,  a  foreign
profit corporation,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant
American Airlines, Inc.'s Motion to Transfer (Doc. #9) filed on
August 28, 2023.  Plaintiff filed a Response (Doc. #10) on
September 11, 2023.  Defendant American Airlines, Inc. (AA),
previously identified as American Airlines Group, Inc.[1], seeks to
transfer the case to the Southern District of Florida.  On October
10, 2023, defendant Michael Vivaldi (Vivaldi) filed a Response in
Support of Defendant American Airlines' Motion to Transfer; and
Vivaldi's Alternative Request to Transfer to Orlando (Doc. #25).
On October 31, 2023, Vivaldi filed an Amended Motion to Transfer
(Doc. #39), to which plaintiff filed a Response in Opposition (Doc.

---

[1] See Doc. #60, substituting American Airlines, Inc. as the
proper defendant.

#52) on December 4, 2023. For the reasons set forth below, the Court denies the motions to transfer.

Also before the Court is defendant American Airlines, Inc.'s Motion to Partially Dismiss Plaintiff's Complaint (Doc. #9) filed on August 28, 2023. AA seeks dismissal of Counts III and IV of the Complaint. Plaintiff filed a Response (Doc. #10) on September 11, 2023. On October 31, 2023, Vivaldi filed an Amended Motion to Dismiss, [and] to Strike Claims for Attorneys' Fees (Doc. #39), and plaintiff filed a Response in Opposition (Doc. #52) on December 4, 2023. For the reasons set forth below, the Court grants the motions to dismiss Counts I, II, III and IV without prejudice, and denies the motion to strike as moot.

**I.**

Plaintiff Alaina Trocano (Plaintiff or Trocano) is a resident of Lee County, Florida and a flight attendant employed by defendant AA. AA is a foreign corporation with a principal place of business in Fort Worth, Texas. Defendant Vivaldi, who resides in Orlando, Florida, is also a flight attendant employed by AA. According to the factual allegations in Plaintiff's Complaint (Doc. #4):

Trocano was a participant in the January 6, 2021, activities in Washington, D.C. on Capitol Hill. Because of this participation, Vivaldi created and published information on the internet harassing and defaming Trocano. Vivaldi began by creating an article/petition on Change.org titled "Fire and Prosecute

flight attendant/domestic threat Alaina Trocano." This article stated that Trocano had participated in the January 6th insurrection on Capitol Hill. On January 9, 2021, the petition was updated with a video created by a YouTube user linked to Vivaldi. Vivaldi encouraged people to share the petition, arguing that Plaintiff should not be allowed to work for another airline. On January 10, 2021, the petition was again updated to note that AA was not planning on reprimanding Trocano.

As a result of these publications, Plaintiff started to receive phone calls from news stations and was bullied on social media. Plaintiff turned to AA for help. Plaintiff contacted the AA's Human Resources office and was assigned to Sharon Douglas, who referred Plaintiff to an Employee Assistance therapy program. AA subjected plaintiff to 15 hours of interrogation. Plaintiff also attended a virtual meeting with her union representative, who brought up Plaintiff's Facebook profile showing a picture of her face and a video of an American Flag that was sent in as being offensive.

On January 14, 2021, Plaintiff met with Ms. Douglas and disclosed Vivaldi's link to the petition. Plaintiff discussed her trauma with Ms. Douglas, disclosed that managers on duty were part of the group harassing her, and reported racist comments.

On an unspecified date the petition was again updated to keep sharing information and keep AA accountable, but the Complaint

does not identify who made the update.  On February 1, 2021, the petition was again updated with information including Plaintiff's full name, and the public was encouraged to reach out to the Ethics Point Helpline and to news stations.

On February 2, 2021, the FBI visited Plaintiff based on an anonymous tip from a flight attendant group and stayed for 10 minutes.  Plaintiff called the Union about the visit and about company emails being put online.  AA stated that they already knew, and that the company's safety team had reached out to them the night before.

On February 4, 2021, Plaintiff called AA Human Resources for guidance.  Plaintiff asserted that she was unable to process the trauma from trying to get out of D.C. and was feeling unsafe. Other flight attendants were trying to get Plaintiff on the no-fly list so she could not leave D.C., and Plaintiff was subjected to repeated interrogation.  A meeting with Human Resources lasted four hours and was then continued.

On February 11, 2021, Plaintiff attended the continued HR meeting and was informed that her friends were being cyber-stalked. Plaintiff told the union that she was concerned about her safety. Plaintiff stated that she was having trouble remembering details and focusing.  Plaintiff was asked to retrace her steps on an outline of the Capitol, but due to anxiety could not remember and was afraid the meeting would be overheard.  Because Plaintiff was

having issues speaking and remembering, another meeting was scheduled.

On March 2, 2021, Plaintiff had another meeting with HR before returning to work.  Plaintiff asked for guidance on how to deal with conversations among crews and was told "your views are your views" and to not engage.  On July 28, 2021, plaintiff was directed to have another meeting.  As a result, she relived the experiences, causing stress and fear for her safety and that she would be recognized by a crewmember when flying.  Plaintiff has lost friends, suffered anxiety, lost her appetite, and had to delete her Facebook page and lose contact with longtime friends.

Additional harassing social media posts were sent to Plaintiff and forwarded to Ms. Douglas.  Other flight attendants disclosed where Plaintiff was based and her employee number, and Plaintiff was given the name "Tropicana" so employees could talk about her without reprimand.  Additional people started calling Plaintiff a terrorist and a racist.  While other AA flight attendants were at the January 6 event, Plaintiff is the only single white female receiving this degree of harassment.  Other similarly situated employees did not receive the same backlash for attending the January 6, 2021 event, including a black female.

On a different topic, the Complaint alleges that Plaintiff submitted a request for religious accommodation to be exempt from the AA's COVID-19 vaccine mandate.  The request was approved, but

AA took retaliatory disciplinary actions against Plaintiff.  AA gave Plaintiff "discipline points" for having her mask down on a flight and for failing to watch a training video by a deadline, without having provided a reminder.  AA further retaliated by reducing Plaintiff's hours and removing her routes.  Plaintiff was also disciplined for retaliating against the "Attendants of Justice" when she reported bullying and acts of the "Vivaldi group."  Plaintiff also received a negative performance point for social media and another negative point for retaliation.

Plaintiff filed an eight-count Complaint (Doc. #4) alleging state law claims of defamation and defamation per se against Vivaldi (Counts I and II).  The Complaint also alleges negligent supervision and negligent infliction of emotional distress against AA (Counts III and IV).  Plaintiff also alleges federal claims against AA under Title VII for creating a hostile work environment based on race (Count V) and religion (Count VI), and for retaliation (Count VII), and for disparate treatment based on race (Count VIII).

The Court first addresses the motions for transfer, and then the motions to dismiss the state law claims.

## II.

### A.

Vivaldi argues that the Court "must" transfer the case to the Orlando Division of the Middle District of Florida pursuant to

Local Rule 1.04(b) of the Local Rules of the United States District Court for the Middle District of Florida.  That Rule states: "A party must begin an action in the division to which the action is most directly connected or in which the action is most conveniently advanced.  The judge must transfer the action to the division most consistent with the purpose of this rule."  M.D. Fla. R. 1.04(b).  While Vivaldi lives in Orlando, Florida, nothing in the Complaint implicates Orlando as being the division "most directly connected" to the action or the division in which "the action is most conveniently advanced."  Indeed, Vivaldi denies making the statements attributed to him, in Orlando or anywhere else.  (Doc. #39, p. 3 n.2.)  Accordingly, Local Rule 1.04(b) does not require transfer to the Orlando Division.

### B.

AA seeks a transfer of venue to the Southern District of Florida as a matter of convenience.  AA asserts that the case could have been brought in the Southern District of Florida, and that balancing the relevant factors of 28 U.S.C. § 1404(a) establishes that the Southern District of Florida is the better venue.  Vivaldi joins in this request.  Plaintiff does not.

AA argues that Trocano is a flight attendant based out of Miami International Airport (MIA), and Vivaldi is a flight attendant based out of Philadelphia International Airport living in Orlando, Florida.  Trocano's former and current Flight Service

Managers both work at MIA; employee records and Ms. Douglas are at MIA; and Trocano's union representative is a flight attendant based out of MIA.  The identified comparator is based out of LaGuardia Airport in New York, and lives in Virginia near Reagan Washington National Airport (DCA).  AA operates nine daily nonstop flights between Orlando and Miami and none between Orlando and Southwest Florida International Airport (RSW).  AA operates four nonstop daily flights between Phoenix (where a witness resides) and MIA, and none between Phoenix and RSW.  AA operates one nonstop flight per day between DCA and RSW.  See The Declaration of Dan Cleverly (Doc. #9-1).

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the case might have been brought, or to any district to which all parties have consented, "in the interest of justice," and "[f]or the convenience of parties and witnesses."  A court considers a number of factors in exercising its discretion:

> Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)
(citation omitted).  Additionally,

> [m]erely demonstrating that litigating the
> case in another division or district would be
> equally convenient will not suffice. [Van
> Dusen v. Barrack, 376 U.S. 612, 645-46, 84 S.
> Ct. 805, 824 (1964)]. To justify transferring
> a case, a court must conclude that "some other
> forum is a *better* location to hear the
> dispute." 15 Wright, et al. Federal Practice
> and Procedure § 3841, at 4 (emphasis added).
> Courts called upon to address a motion to
> transfer should be mindful that § 1404 is not
> designed to transfer the inconvenience from
> one party to another. S.E.C. v. Lauer, 478 F.
> App'x 550, 554 (11th Cir. 2012); Smithfield
> Packing Co., Inc. v. V. Suarez & Co., Inc.,
> 857 F. Supp. 2d 581, 588-89 (E.D. Va. 2012).
> "[M]erely shifting inconvenience from one
> party to another is not a sufficient basis for
> transfer." Research Automation, Inc. v.
> Schrader-Bridgeport Int'l, Inc., 626 F.3d 973,
> 978 (7th Cir. 2010).

Combs v. Fla. Dep't of Corr., 461 F. Supp. 3d 1203, 1207 (N.D.
Fla. 2020).

The Court finds that on balance the relevant factors do not
justify transfer of the case to the Southern District of Florida
or Orlando.

**(1)  Convenience of Witnesses, Documents & Proof**

"Because witnesses typically are essential to establishing a
claim or defense, and they frequently have nothing to gain from
testifying, courts carefully consider the convenience of witnesses
in analyzing a motion to transfer." Combs v. Fla. Dep't of Corr.,
461 F. Supp. 3d 1203, 1208 (N.D. Fla. 2020).  Only plaintiff

resides in the Fort Myers Division, although a defendant and other witnesses reside in other divisions of the Middle District of Florida. The Fort Myers Division routinely entertains parties, witnesses, and attorneys from Miami, Orlando, and elsewhere without undue hardship to the participants or the case. AA is not the only airline which services the Fort Myers area. As plaintiff notes, access to sources of proof by electronic means is easily done despite their location in Miami. This factor does not weigh in favor of a transfer to Miami or Orlando.

**(2)   Convenience of Parties**

Both Plaintiff and Vivaldi reside in the Middle District of Florida, although in different divisions. Transfer to Miami would certainly be an inconvenience to Vivaldi, although he is apparently willing to accept it. The Fort Myers Division has a greater nexus to the causes of actions alleged in the Complaint. There is no meaningful inconvenience to the corporate defendant, which has a presence in all the locations at issue. This factor does not weigh in favor of a transfer to Miami or Orlando.

**(3)   Operative Facts, Relative Means & Availability of Process**

The primary operative facts concerning Vivaldi involve online activity through social media posts and change.org after Plaintiff travelled to Washington, DC on January 6th. This can be accessed from anywhere, and therefore this does not favor transfer. The

operative facts concerning AA appear to involve its activities in Miami.

The relative means of the parties factor clearly weighs in favor of plaintiff's choice of forum compared to AA's choice. Vivaldi represents that he too is also a person of limited means and is currently on unpaid medical leave and is represented by a *pro bono* attorney. (Doc. #25-1.)  Vivaldi has been working at a part-time job while on leave and has retained "some travel benefits" that would allow him to fly to Miami if the case is transferred there. (Id.)  The Court does not find this sufficient to justify transfer to Miami, whether considered alone or in combination with the other factors.

### (4)   Familiarity with Governing Law

Familiarity with the governing law is a neutral factor as both courts have identical familiarity with the applicable federal and Florida law.  Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) ("A change of venue under s 1404(a) generally should be, with respect to state law, but a change of courtrooms.")

### (5)   Choice of Forum

"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Gianmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted).  Plaintiff's choice of forum weighs heavily

against transfer and is not clearly outweighed by other considerations.

**(6)  Interest of Justice**

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system. [] In analyzing this factor, courts consider: (1) where the action is more likely to be expeditiously and efficiently litigated; (2) judicial economy and docket congestion in the competing districts or divisions; (3) each party's ability to enforce a judgment; (4) whether transfer would allow for a consolidation of litigation; (5) the relationship of each community to the controversy; and (6) any obstacles to a fair trial that the parties may encounter in the competing venues." Combs, 461 F. Supp. 3d at 1215 (internal citation omitted).  The first and second component of this factor weighs in favor of maintaining the case in the Fort Myers Division of the Middle District of Florida, while the other components are neutral.

The motion to transfer to the Southern District of Florida is denied.  The alternative request to transfer to the Orlando Division of the Middle District of Florida is also denied.

**III.**

Vivaldi seeks dismissal of both defamation claims against him, while AA seeks dismissal of the two state-law claims against it.  Under Federal Rule of Civil Procedure 8(a)(2), a Complaint

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

## A. Defamation and Defamation Per Se

Counts I and II allege that Vivaldi made false internet statements of material fact about Plaintiff on or about January 7-8, 2021, which were updated on January 8, 9, 14, and 21, 2021. (Doc. #4, ¶¶ 89-96, 98-105.)  Vivaldi seeks dismissal of both defamation counts as barred by the statute of limitations and because the alleged defamatory statements are protected speech since they relate to a matter of public concern.  Because the counts as pled are barred by the statute of limitations, the Court need not address the latter issue.

"'A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the

face of the complaint that the claim is time-barred.'" S.Y. v. Wyndham Hotels & Resorts, Inc., 521 F. Supp. 3d 1173, 1191 (M.D. Fla. 2021) (quoting United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018)). See also Wainberg v. Mellichamp, 23-11680, __ F.4th __, 2024 WL 701845, at *3 (11th Cir. Feb. 21, 2024) (same). The face of Complaint in this case establishes that the defamation claims are time-barred.

The Complaint was originally filed in state court on July 14, 2023. An action founded on defamation must be commenced within two years from the date the cause of action accrues. Fla. Stat. § 95.11(4)(h) (effective July 1, 2018) (previously Fla. Stat. § 95.11(4)(g)). See also Watkins v. Bigwood, 797 F. App'x 438, 444 (11th Cir. 2019) (citing Fla. Stat. § 95.11(4)(g)); Hill v. Allianz Life Ins. Co. of N. Am., No. 6:14-CV-950-ORL-41KRS, 2016 WL 872936, at *3 (M.D. Fla. Feb. 17, 2016), aff'd, 693 F. App'x 855 (11th Cir. 2017) (citing Fla. Stat. § 95.11(4)(g)). The cause of action for defamation accrues at the time of the first publication or utterance. Fla. Stat. § 770.07; Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan, 629 So. 2d 113, 114-15 (Fla. 1993).

Vivaldi argues that any defamation claim accrued by February 1, 2021, at the latest, which was more than two years before suit was filed. Plaintiff agrees that statements made the week of January 8, 2023, would not be actionable, and asserts that these

statements and the updated ones identified in the Complaint are "mere background." (Doc. #52, pp. 6-7, 9-10.) Plaintiff further asserts that she has actionable defamation claims based on statements made *after* the initial Complaint was filed in state court (July 14, 2023). (Id. at 4.)

The 2021 statements identified in the Complaint are clearly time-barred, and therefore Counts I and II as set forth in the Complaint are dismissed without prejudice. In the exercise of its discretion, the Court will allow Plaintiff to file an amended complaint setting forth defamation claim(s) based on statements she alleges were made within the statute of limitations period.

### B. Negligent Supervision

Count III alleges negligent supervision by AA of its employees which led to a series of harassing articles. Plaintiff alleges that once defendant knew of the harassment, it failed in its duty to supervise and protect plaintiff from harassment. Further, defendant disciplined plaintiff despite her being the victim of harassment. As a result of the improper supervision, defendant's employees improperly interrogated plaintiff causing emotional and physical damage. Plaintiff seeks $2 million in damages. (Doc. #4, ¶¶ 107-113.)

AA seeks dismissal of this negligent supervision count because it is barred by the statute of limitations and by Florida's impact rule. AA also argues that the negligent supervision claim

is barred because plaintiff does not allege an underlying common law tort, an element of the cause of action. Plaintiff responds that the negligent supervision cause of action did not accrue until her physical injury was discernible, and interrogations were still ongoing on July 28, 2021. (Doc. #10, pp. 5-6.)

"Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." ACTS Ret.-Life Cmtys. Inc. v. Est. of Zimmer, 206 So. 3d 112, 114 (Fla. 4th DCA 2016) (citation omitted). "Stated differently, negligent supervision occurs when the defendant negligently places the plaintiff under the supervision of an employee whom the defendant either knew or should have known had the propensity to commit the alleged torts." K Co. Realty LLC v. Pierre, 376 So. 3d 730, 735 (Fla. 4th DCA 2023). "It is necessary that the underlying wrong—the actions of the employee or servant—be a tort." Acts Ret.-Life Communities Inc., 206 So. 3d at 115.

Nothing in the Complaint alleges that Vivaldi was Plaintiff's supervisor, and there is no underlying tort alleged to have been committed by Vivaldi. If defamation was the intended tort, those claims have now been dismissed and plaintiff has failed to state a claim. Count III is also barred by the statute of limitations.

An action founded on negligence must be filed within two years. Fla. Stat. § 95.11(4)(a). As with the defamation claims, the face of the Complaint establishes that the negligent supervision claim, as pled, is barred by the statute of limitations. Given the multiple reasons to dismiss Count III, the Court need not address the impact rule arguments as to this count. Count III is dismissed without prejudice and with leave to file an amended claim.

### C. Negligent Infliction of Emotional Distress

Count IV alleges negligent infliction of emotional distress by AA in addressing the harassment and in discipling plaintiff despite her being the victim. Plaintiff alleges that she was subject to "torturous amounts of interrogations" from which she has not recovered emotionally and physically. Plaintiff seeks $1.5 million in damages. (Doc. #4, ¶¶ 116-120.)

AA seeks dismissal of this negligence infliction count because it is barred by the statute of limitations and by Florida's impact rule. AA argues that Count IV must be dismissed as barred by the same statute of limitations applicable in Count III. Plaintiff responds that AA's negligence cause of action did not accrue until her physical injury was discernible, and interrogations were still ongoing on July 28, 2021. (Doc. #10, pp. 5-6.)

The cause of action for negligent supervision based on Vivaldi's "harassment" would have accrued by March 2021 at the

latest.  As previously noted, an action founded on negligence must be filed within two years.  Fla. Stat. § 95.11(4)(a).  The Complaint was not filed until July 14, 2023, and therefore the harassment component of the claim would be untimely.  As to the "torturous amounts of interrogations", one meeting occurred within the statute of limitations on July 28, 2021, when plaintiff was directed to have another meeting after forwarding "more evidence of harassment" by co-workers to HR causing her to relive the experiences causing stress and fear for her safety.  (Doc. #4, ¶ 67-68.)  Therefore, the statute of limitations would not bar the entirety of the claim.

Defendant argues that negligent infliction of emotional distress is also barred by the impact rule.  "In order to state a claim for negligent infliction of emotional distress under Florida law, a plaintiff must satisfy Florida's impact rule."  Goldsworthy v. Dist. Sch. Bd. of Collier Cnty., Fla., No. 2:17-CV-239-JES-CM, 2018 WL 3536081, at *4 (M.D. Fla. July 23, 2018) (citing Gracey v. Eaker, 837 So. 2d 348, 355 (Fla. 2002)).  See also Gonzalez v. Metro. Dade Cnty. Pub. Health Tr., 651 So. 2d 673, 674 (Fla. 1995) ("The 'impact doctrine' which evolved from the common law of England, requires that a plaintiff sustain actual physical impact in order to recover for the negligent infliction of emotional distress.")  "The impact rule requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence

of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" <u>R.W. v. Armor Corr. Health Servs., Inc.</u>, 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) (quoting <u>Southern Baptist Hosp. of Fla. v. Welker</u>, 908 So. 2d 317 (Fla. 2005)). "[T]he Florida Supreme Court held that 'psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist.'" <u>Corbin v. Prummell</u>, No. 2:22-CV-394-JES-KCD, 2023 WL 1967574, at *15 (M.D. Fla. Feb. 13, 2023) (quoting <u>Brown v. Cadillac Motor Car Div.</u>, 468 So. 2d 903, 904 (Fla. 1985)).

Plaintiff alleges that she has anxiety that she will be recognized by passengers and other crew members, which has caused her rheumatoid arthritis to worsen, and she is suffering from serious insomnia and paranoia after all of the interrogations. (<u>Id.</u> at ¶¶ 69-70.) Plaintiff also alleges a loss of appetite. (<u>Id.</u> at ¶ 74.) Plaintiff alleges that she fell and chipped her tooth but does not allege that it was caused by the negligence of AA. (<u>Id.</u>)

Plaintiff's physical manifestations relate back to July 28, 2021, at the latest and are insufficient to comply with the impact rule. <u>See, e.g.</u>, <u>Williams v. Boyd-Panciera Family Funeral Care, Inc.</u>, 293 So. 3d 499, 500-01 (Fla. 4th DCA 2020) ("[T]he emotional distress suffered must flow from physical injuries the plaintiff

sustained in an impact." (citation omitted)); <u>Pipino v. Delta Air Lines, Inc.</u>, 196 F. Supp. 3d 1306, 1318 (S.D. Fla. 2016); (panic attacks manifested by physical symptoms are not equal to a physical injury); <u>Elliott v. Elliott</u>, 58 So. 3d 878, 882 (Fla. 1st DCA 2011) (a pre-existing condition that is exacerbated is insufficient, so is nausea, depression, loss of appetite, and anxiety) (collecting cases); <u>LeGrande v. Emmanuel</u>, 889 So. 2d 991, 995 (Fla. 3d DCA 2004) (finding that memory loss and the exacerbation of a preexisting condition were insufficient to support a cause of action for negligent infliction of emotional distress); <u>R.J. v. Humana of Fla., Inc.</u>, 652 So. 2d 360, 364 (Fla. 1995) (finding that "hypertension, pain and suffering, mental anguish, loss of capacity for the enjoyment of life" are "intangible, mental injuries [that] are insufficient to meet the physical injury required under the impact rule"). The motion to dismiss will be granted based on the impact rule.

Accordingly, it is now

**ORDERED:**

1. Defendant AA's Motion to Transfer (Doc. #9) is **DENIED.**

2. Defendant Vivaldi's Alternative Request to Transfer to Orlando (Doc. #25) **DENIED.**

3. Defendant Vivaldi's Amended Motion to Transfer (Doc. #39) **DENIED.**

4. Defendant AA's Motion to Partially Dismiss Plaintiff's Complaint (Doc. #9) is **GRANTED IN PART AND DENIED IN PART**. Count III is dismissed for failure to state a claim and as barred by the statute of limitations. Count IV is dismissed for failure to comply with the impact rule and as partially barred by the statute of limitations.

5. Defendant Vivaldi's Amended Motion to Dismiss, to Strike Claims for Attorneys' Fees (Doc. #39) is **GRANTED IN PART**. Counts I and II are dismissed as barred by the statute of limitations and the remaining issues are **DENIED** as moot.

6. Plaintiff may file an Amended Complaint within **twenty-one (21) days** of the Opinion and Order.  If no Amended Complaint is filed, AA shall file its answer to the remaining counts in the Complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this ___12th___ day of March 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record