UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Alaina Trocano,

      Plaintiff,

v.                          Case No:  2:23-cv-645-JES-KCD

American Airlines, Inc.,

      Defendant.

_____

### OPINION AND ORDER

This matter now comes before the Court on the Motion for Summary Judgment (Doc. #88) of Defendant American Airlines, Inc. ("American" or Defendant), which was filed on November 28, 2024. Plaintiff Alaina Trocano ("Trocano" or Plaintiff) filed a Response in Opposition (Doc. #90) on December 19, 2024.  American filed a Reply in Support (Doc. #92) on January 2, 2025.

For the reasons set forth below, American's Motion for Summary Judgment (Doc. #88) is **GRANTED.**

### I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us,

Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, a court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from un-disputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

A plaintiff alleging discriminatory treatment must present either "direct evidence or circumstantial evidence" that her employer acted with discriminatory intent.  <u>Jefferson v. Sewon Am., Inc.</u>, 891 F.3d 911, 921 (11th Cir. 2018).  "Direct" evidence is evidence that "if believed, proves the existence of discriminatory intent without inference or presumption."  <u>Id.</u>  "Circumstantial" evidence is evidence that only "suggests, but does not prove, a discriminatory motive."  <u>Id.</u> at 920–21.

In the Eleventh Circuit, a plaintiff relying on circumstantial evidence to support a claim of discrimination may survive summary judgment by (1) satisfying the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), or (2) presenting a "convincing mosaic" of circumstantial evidence sufficient for a reasonable juror to infer intentional discrimination.  <u>See</u> <u>Lewis v. City of Union City</u>, 918 F.3d 1213, 1220, 1221 n.6 (11th Cir. 2019) (en banc).

Under the <u>McDonnell Douglas</u> burden-shifting framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  <u>Lewis</u>, 918 F.3d at 1220.  A plaintiff may do so by showing that (1) she "belongs to a protected class," (2) she "was subjected to an adverse employment action," (3) she "was qualified to perform the job in question," and (4) her "employer treated 'similarly situated' employees outside her class more favorably."  <u>Wilson v. CSX Transp., Inc.</u>, No. 24-11127, 2025 WL

- 3 -

964568, at *5 (11th Cir. Mar. 31, 2025).  To show that "a similarly situated employee outside of her protected class was treated differently" a plaintiff must present evidence of "a comparator, or someone who is 'similarly situated in all material respects.'" Id. at *6 (quoting Lewis, 918 F.3d at 1231).

If a plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to give a legitimate, nondiscriminatory reason for its actions.  Lewis, 918 F.3d at 1221.  If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reasons are mere pretext for unlawful discrimination.  Id.

Alternatively, "[t]he convincing mosaic approach is — in its entirety — the summary judgment standard. That phrase 'is a metaphor, not a legal test and not a framework.'"  McCreight v. AuburnBank, 117 F.4th 1322, 1335 (11th Cir. 2024).  The convincing mosaic approach may serve as a useful tool for plaintiffs with "significant evidence of illegal discrimination who lack the comparator evidence often required to set out a case under McDonnell Douglas."  Id.  In practice, this approach may allow a court to "look to comparator evidence absent 'a strict comparator.'"  Butler v. Econ-O-Check Corp., No. 24-10867, 2025 WL 1145045, at *5 (11th Cir. Apr. 18, 2025).  However, the Eleventh Circuit has been careful to specify that the McDonnell Douglas framework and convincing mosaic approach are merely "two paths to the same destination —

- 4 -

the ordinary summary judgment standard." McCreight, 117 F.4th at 1335.

"[A] plaintiff need not specifically use the term 'convincing mosaic' [to argue that] she has offered enough evidence to survive summary judgment." Id. at 1336.  But a plaintiff who makes "no specific arguments tying the 'convincing mosaic' theory" to a claim of discrimination cannot survive summary judgment. Bailey v. Metro Ambulance Servs., Inc., 992 F.3d 1265, 1274 (11th Cir. 2021); McCreight, 117 F.4th at 1336 (emphasizing the fatal consequences for a plaintiff who "fail[ed] to raise *any* sort of argument in favor of his disparate treatment claim").

## II.

Trocano has been employed as a flight attendant for American since July 2014.  During that time period there were three gaps in her employment — a brief period of termination in 2017,[1] a furlough from October 2020 to March 2021 during the COVID-19 pandemic, and a medical leave of absence from February 2022 to February 2023.

During the COVID-19 furlough, Trocano increased her involvement on the social media platforms Facebook, Instagram, and TikTok.  She began posting political commentary and quickly built a signi-

---

[1] Trocano was briefly terminated after testing positive for amphetamines.  She was reinstated in March 2017 after agreeing to treatment under American's Employee Assistance Program, which included meeting with a substance abuse professional. (Doc. #88-1, p. 8, 27:21-29:9.)

ficant online presence.  On TikTok alone, she amassed 70,000 to 80,000 followers by the end of 2020.[2]  On January 6, 2021, Trocano attended the protest of the 2020 national election results at the U.S. Capitol.  Trocano did not go inside the Capitol and was not charged with any offense.

Trocano asserts that from September 2020 onwards, she has been subjected to harassment, vulgarity, racism, and abuse from her fellow American employees, all tacitly condoned by American. She also asserts that American has enforced its Attendance & Performance Program and its Policies unequally against her because of her skin color and religion.  On October 24, 2022, Trocano filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR").

At her deposition, Trocano admitted to knowing of only "three comments . . . from three different people" that referenced her race between "late 2020" and "early 2021."[3]  The online comments were posted in private Facebook groups for former and current American flight attendants.[4]  One comment referenced "YT co-workers."[5]  The record contains two more comments with racial elements: "As if an employer supporting their Black coworkers needs the input

---

[2] (Id. at 13, 46:2–16.)

[3] (Id. at 17, 64:14–22.)

[4] (Id. at 9–10.)

[5] (Id. at 17.)

of one single white person" and "I hate YT."[6]  All those comments were made in late 2020.[7]  Trocano also claims that Michael Vivaldi, a co-worker and former defendant, made a post "referencing [her] privilege . . . shortly after January 6, 2021."[8]

Trocano notes only one comment made after December 28, 2021.[9] In August 2023, Vivaldi made another post that used the term "privilege."[10]  At least two years had passed since the last occurrence. Trocano also acknowledges that the term "privilege" does not clearly have racial implications.  She merely "wonder[s] what" such comments may be "referring to, as far as what privilege[?]"[11]  In addition, Trocano attests that she "can't recall" any comments being made about her religion, and she has not identified any.[12]

The record contains just one instance of conduct by American after December 28, 2021.  On February 3, 2022, Trocano received an advisory for mask noncompliance during an American flight on Dec-

---

[6] (Id. at 195.)

[7] (Id. at 194–95.)

[8] (Id. at 43, 167:11–168:13.)  Trocano also claims that an unknown individual referred to her as a "thin-lipped, white bread piece of mayo bitch."  (Id.)

[9] December 28, 2021, marks the beginning of the 300-day "administrative exhaustion" period that preceded Trocano's filing of a discrimination charge with the FCHR.

[10] (Id. at 43, 169:12–22.)

[11] (Id. at 17, 64:7–12.)

[12] (Id. at 51, 200:5–7.)

ember 3, 2021.[13]  However, she "admits" to knowing of no comparators treated differently than her as it relates to such conduct.[14]  Indeed, she "admits" to knowing of no comparators treated differently than her for <u>any</u> conduct that occurred between December 2021 and February 2022.[15]

## III.

Trocano's Complaint pleads four[16] counts against American: Title VII Race Discrimination for Hostile Work Environment (Count 5); Title VII[17] Religious Discrimination for Hostile Work Environ-

---

[13] (<u>Id.</u> at 243, 246.)

[14] (Docs. #90 p. 3; #88, ¶ 58).

[15] (Docs. #90, p. 3; #88, ¶¶ 53, 55, 58.)  There are only two other instances of conduct by American between December 2021 and February 2022.  First, on December 9, 2021, American received notice that Colombia would begin requiring all people entering the country, including crew members, to be vaccinated against COVID-19.  (Doc. #88-1, p. 231.)  In response, American removed the hours of unvaccinated crew members with flights scheduled to Colombia in December.  (<u>Id.</u>)  Second, on December 21, 2021, Trocano received an advisory after missing a deadline for a web-based training.  (Doc. #88-1, p. 243.)

[16] Trocano originally sued American and Michael Vivaldi on eight counts.  The Court dismissed the counts against Vivaldi — Counts 1 and 2 for defamation and defamation *per se* — as time barred.  (Doc. #68, p. 21).  The Court also dismissed two of the counts against American.  (<u>Id.</u>)  Count 3 for negligent supervision was dismissed for failure to state a claim.  (<u>Id.</u>)  Count 4 for negligent infliction of emotional distress was dismissed pursuant to the impact rule and as potentially time barred.  (<u>Id.</u>)  Although Trocano received leave to file an amended complaint, she did not do so properly.  (Doc. #77, p. 5.)  She then elected to pursue her claims against Vivaldi in state court while the four pending counts against American remained here.  (<u>Id.</u>)

[17] Trocano's Complaint states that Count 6 is being brought under "Title VI" (Doc. #4, p. 18), but that is evidently a typo.

ment (Count 6); Title VII Religious Retaliation (Count 7); and Title VII Race Discrimination for Disparate Treatment (Count 8). (Doc. #4, pp. 17-21.)

American moves for summary judgment on all counts.

## A. Count 6: Title VII Religious Discrimination for Hostile Work Environment

In Count 6, Trocano alleges a work environment hostile to her religion. She claims that American "discriminated against [her] because of her protected [religious] class . . . by subjecting her to unwelcome harassment," including "intimidation, ridicule, and insult so severe and pervasive that it altered the conditions of [her] employment and created an abusive working environment." (Doc. #4, ¶¶ 128–29.) That environment, she alleges, was both "objectively and subjectively hostile to [her] . . . based on her religion." (Id. at ¶ 130.) Finally, she alleges that American "knew or should have known of the harassment," but "failed to take appropriate remedial action." (Id. at ¶ 131.)

To make out a hostile work environment claim, a plaintiff must show that: (1) she suffered "unwelcome harassment"; (2) the harassment was based on a "protected characteristic," such as re-ligion; and (3) the harassment was sufficiently "severe or perva-sive" to alter the terms and conditions of her employment and create an abusive working environment. Harris v. Pub. Health Tr.

of Miami-Dade Cnty., 82 F.4th 1296, 1302 (11th Cir. 2023).[18]

Trocano stumbles at the first step.  As American notes, she "does not assert [that] anyone ever made a comment about her religion."  (Doc. #88, p. 15) (emphasis added).  Trocano does not respond to this.  Indeed, the only mention of "religion" in her response is when she quotes one of American's arguments.  (Doc. #90, p. 15.)  She does refer to her purported faith, but not to assert that religion was a factor in the way that she was treated:

> Admittedly, Trocano is a white Christian female who supports Donald Trump. The harassment here is not simply being called a Trumper or terrorist, Trocano points to harassment motivated by her race.
>
> . . .
>
> Since it's a white female Christian who happens to be a Trump supporter, A[merican] did not care and that was unreasonable by all standards. Racial double standards are wrong and should not exist in the workplace.

(Id. at 15, 18) (emphasis added).

Her allegations of religious discrimination are also unsupported by the record.  In December 2020, Trocano contacted Sharon Douglas, a member of American's HR team, about "a lot of religious discrimination occurring in the workplace."[19]  (Doc. #91, ¶ 91.)

---

[18] The Eleventh Circuit has described a hostile work environment claim as "just a species" of a disparate treatment claim.  Harris, 82 F.4th at 1304 n.5.  However, "[f]or whatever reason," the Eleventh Circuit has not "applied the three traditional frameworks — direct evidence, McDonnell Douglas, and 'convincing mosaic' — to hostile-work-environment claims."  Id.

[19] Of which Trocano provides no details.

Douglas advised Trocano to report such conduct and to inform per-
petrators that religious adherents are a "protected class."  (Id.)
On January 4, 2022, when Trocano filed a request for a religious
exemption from American's vaccine mandate, her request was granted
in just three days.  (Doc. #88-1, p. 228.)  Neither event is
indicative of an environment hostile to religion.  See Wooten v.
Bd. of Trs., Fla. A & M Univ., 426 F. Supp. 2d 1261, 1266 (N.D.
Fla. 2006) ("[plaintiff's] claim that she was given a sabbatical
in 1992 hardly supports a claim of racial discrimination or reta-
liation") (emphasis added).

Thus, as to Trocano's claim of Title VII Religious Discrimi-
nation for Hostile Work Environment (Count 6), the motion for
summary judgment is **GRANTED.**  McCreight, 117 F.4th at 1336; Bailey,
992 F.3d at 1274.[20]

**B. Count 7: Title VII Religious Discrimination for Retaliation**

In Count 7, Trocano claims that American retaliated against
her because of her religion.  To begin, she alleges that she
"engaged in protected activity when she applied for a religious
accommodation from [American's] vaccine mandate."  (Doc. #4, ¶
133.)  Next, she alleges that she "suffered an adverse employment

---

[20] Additionally, Trocano has "abandoned any grounds of [reli-
gious] discrimination by failing to address them in her opposition
brief to the motion for summary judgment."  Mosley v. Alabama
Unified Jud. Sys., Admin. Off. of Cts., 562 F. App'x 862, 866 (11th
Cir. 2014).

action when [American] removed some of her flight routes without giving her replacement routes and allowed and engaged in such severe and pervasive harassment of [her] that it altered the conditions of [her] employment and created an abusive working environment." (Id. at ¶ 134.)

To establish a *prima facie* case of retaliation under the McDonnell Douglas framework, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there is some causal relation between the two events. Wilson, 2025 WL 964568, at *4. A plaintiff who fails to establish a *prima facie* case of retaliation cannot survive summary judgment. Likewise, a plaintiff who makes "no specific arguments tying the 'convincing mosaic' theory" to a claim of discrimination cannot survive summary judgment. See Bailey, 992 F.3d at 1274.

As American notes, "[a]part from the advisory for mask non-compliance, none of the actions Trocano complains about could have been retaliatory as they occurred before her January 4, 2022[,] exemption request." (Doc. #88, p. 24) (citing Eliassaint v. RTG Furniture Corp., 551 F. Supp. 3d 1293, 1312 (M.D. Fla. 2021) ("no causal connection exists between [plaintiff's] EEOC charge and his transfer requests because the alleged retaliatory action . . . occurred before he filed the EEOC complaint."). American also notes that "even if Trocano could establish a *prima facie* case of retaliation, she has no evidence calling into question American's

explanation for the [mask noncompliance] advisory." (Doc. #88, p. 25.)

Once again, Trocano does not respond to these arguments. The words "vaccine," "exemption," "mask," and "route" appear nowhere in her response. She does mention "retaliation," but only in reference to her fear of being "swatted" and a TikTok video that she created to "send a message to Vivaldi." (Doc. #90, pp. 5, 11.) She makes no reference to either of the advisories that she received between December 2021 and February 2022. (Id. at 8, 16.)

Any conduct from before Trocano applied for a religious exemption on January 4, 2022, necessarily cannot have been retaliatory. Gooden v. Internal Revenue Serv., 679 F. App'x 958, 968 (11th Cir. 2017) (holding that conduct is "not retaliatory" if "it occur[s] before [an employee] engage[s] in protected activity"). Thus, the only conduct possibly relevant to Trocano's retaliation claim is the advisory that she received for mask noncompliance on February 3, 2022.

But Trocano does not attempt to establish a *prima facie* case of retaliation based on that advisory. She does not make any specific arguments to tie a convincing mosaic theory to her claim of religious retaliation. She does not contest American's proffered reasons for issuing the advisory. Indeed, she "admits" (Doc. #90 p. 3) to knowing of no flight attendants "reported for not wearing a mask during the mandate who did not also receive an

advisory." (Doc. #88, ¶ 58). For her retaliation claim to survive, at a minimum she would need to show "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in American's proffered legitimate reasons for its actions, such that a reasonable factfinder could find those reasons "unworthy of credence." Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007). She has not done so.

Thus, as to Trocano's claim of Title VII Religious Discrimination for Retaliation (Count 7), the motion for summary judgment is **GRANTED**. McCreight, 117 F.4th at 1336; Bailey, 992 F.3d at 1274.[21]

### C. Counts 5 and 8: Title VII Race Discrimination for Hostile Work Environment and Title VII Race Discrimination for Disparate Treatment

The Court turns finally to Trocano's claims of race discrimination for (1) a work environment hostile to her race, and (2) disparate treatment because of her race.

#### (1) Arguments

American asserts that "most of Trocano's claims" occurred more than two years before she filed her charge of discrimination with the FCHR on October 24, 2022.[22] (Doc. #88, p. 2.) Generally,

---

[21] Additionally, Trocano has abandoned any grounds of religious retaliation by failing to address them in her opposition brief to the motion for summary judgment. Mosley, 562 F. App'x at 866.

[22] Trocano's FCHR charge was signed on "10/16/2022," but American asserts that a timestamp indicates that it was received by the

"[o]nly alleged discriminatory acts arising within 300 days prior
to the filing of the charge are actionable." Boatwright v. Fla.
Credit Union, No. 22-12032, 2023 WL 3712289, at *1 (11th Cir. May
30, 2023). Trocano's charge was filed on October 24, 2022, so
discriminatory acts outside that 300-day window — that is, from
before December 28, 2021 — would ordinarily not be actionable.
Thus, American contends that most of Trocano's claims are barred
for failure to exhaust administrative remedies. (Id. at 14-15.)

Trocano responds[23] that that American subjected her to a "hos-

_____

FCHR on "10/24/2022." Trocano does not dispute that assertion.

[23] In her response brief, Trocano makes a drive-by argument that
American has waived its failure-to-exhaust defense. (Doc. #90,
pp. 12-13.) American replies that it adequately pled that defense
in its answer: "Plaintiff's claims are barred, in whole or in
part, by the applicable statutes of limitations." (Doc. #92, pp.
2-3) (quoting Doc. #75, p. 49); see also (Doc. #92, pp. 2-3)
(citing numerous Eleventh Circuit cases referring to administra-
tive exhaustion as a "statute of limitations") (collecting cases).
Moreover, as American notes, courts in this Circuit have held that
failure to exhaust and other affirmative defenses are not waived
if raised "in a responsive pleading, [a] motion to dismiss, or [a]
motion for summary judgment." Reddick v. Republic Parking Sys.,
No. 2:17-CV-00728-KOB, 2019 WL 2601547, at *1 (N.D. Ala. June 25,
2019) (emphasis added) (collecting cases); see Edwards v. Fulton
Cnty., Ga., 509 F. App'x 882, 888 (11th Cir. 2013) (finding no
abuse of discretion in a trial court's rejection of the argument
that defendants waived an affirmative defense raised for the first
time "in [a] motion for summary judgment," as that "gave [plain-
tiff] sufficient opportunity to respond to the defense," and be-
cause "discovery [covered] the subject matter of the defense");
Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1322 (11th Cir.
2006) (holding that affirmative defense of timeliness was not
waived when raised for the first time in a "summary judgment mo-
tion," when a plaintiff received an adequate "opportunity to res-
pond" and did "not allege [any] prejudice[]") Here, there is no
question that American has raised the administrative exhaustion
defense in its motion for summary judgment. And even if this were

tile work environment." (Doc. #90, p. 13.) Although a hostile
work environment is "comprised of a series of separate acts," she
continues, the underlying environment may constitute one "unlawful
employment practice"; thus, if "one act contributing to the claim
occurs within the filing period, the entire time period of the
hostile environment may be considered." (Id.) (quoting Watson v.
Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) and citing
Meneffee v. Montgomery Cnty. Bd. of Educ., 137 F. App'x 232, 233
(11th Cir. 2005)).

According to American, the continuing-violation doctrine pro-
vides no escape, as "[t]here is no evidence anyone made a harassing
comment referencing Trocano's race after early 2021, and she adm-
itted no one made a harassing comment of any kind (discriminatory
or otherwise) after December 1, 2021." (Doc. #88, p. 15.) There-
fore, American concludes, Trocano cannot plead "an act contribut-
ing to the allegedly racially [hostile] work environment within
300 days of her charge." (Id.)

**(2) Analysis**

To make out a *prima facie* case of race discrimination, a
plaintiff must show that she: (1) belongs to a "protected class";
(2) was subjected to an "adverse employment action"; (3) was "qua-

---

the first time that the defense were being raised, Trocano has had
an adequate opportunity to respond and has identified no prejudice
to herself. The Court concludes that there has been no waiver.

lified" to perform the job in question; and (4) was treated "less favorably" by her employer than "similarly situated" employees outside the protected class. <u>Adewumi v. Wellstar Med. Grp.</u>, No. 24-12243, 2025 WL 831584, at *5 (11th Cir. Mar. 17, 2025).  A plaintiff who fails to make "specific arguments tying the 'convincing mosaic' theory" to a claim of discrimination cannot survive summary judgment. <u>See Bailey</u>, 992 F.3d at 1274.

And as stated earlier, to make out a hostile work environment claim, a plaintiff must show that: (1) she suffered "unwelcome harassment"; (2) the harassment was based on a "protected characteristic," such as race; and (3) the harassment was sufficiently "severe or pervasive" to alter the terms and conditions of her employment and create an abusive working environment. <u>Harris</u>, 82 F.4th at 1302.

Whether a plaintiff makes a claim of race discrimination or hostile work environment, Title VII requires that an administrative complaint be filed within a specified time after the challenged employment action.  42 U.S.C. § 2000e-5(e).  Florida is a "deferral state," which means that the time for filing a discrimination charge is extended to "300 days" after an adverse action, so long as that charge is filed with the FCHR.  <u>E.E.O.C. v. Joe's Stone Crabs, Inc.</u>, 296 F.3d 1265, 1271 (11th Cir.2002).  Generally, events that occur outside that 300-day period are time barred and unactionable.  But they may be relevant in two respects:

> First, for any type of discrimination claim, an employee
> can cite 'prior acts as background evidence in support
> of a timely claim.' . . . Second, a single, continuing
> hostile work environment can include events that pre-
> date the applicable time period.

Harris, 82 F.4th at 1303.

Trocano is correct that "so long as one act contributing" to
a single, continuing hostile work environment claim occurred "with-
in the filing period, 'the entire time period of the hostile env-
ironment may be considered [to] determine[e] liability.'" Jones
v. Allstate Ins. Co., 707 F. App'x 641, 647 (11th Cir. 2017)
(quoting Watson, 324 F.3d at 1258 (quoting Nat'l R.R. Passenger
Corp. v. Morgan, 536 U.S. 101, 117 (2002))).  Similarly, "the
continuing-violation doctrine" could allow her to sue on her "oth-
erwise time-barred" disparate treatment claims "if related acts of
discrimination continued to occur within the limitations period."
Manley v. DeKalb Cnty., Georgia, 587 F. App'x 507, 511 (11th Cir.
2014) (citing Joe's Stone Crabs, 296 F.3d at 1271).

But here, the only alleged conduct that falls within the
filing or limitations period — i.e., during the 300-day period
before October 24, 2022 — is the advisory that Trocano received
for mask noncompliance on February 3, 2022.  And that conduct
cannot resurrect her time-barred claims, because on this record it
was not discriminatory.

As discussed earlier, Trocano "admits" (Doc. #90 p. 3) to
knowing of no flight attendants "reported for not wearing a mask

during the mandate who did not also receive an advisory." (Doc. #88, ¶ 58.) As a result, the advisory she received for mask noncompliance is not, and cannot be, a "related act" of disparate treatment. Manley, 587 F. App'x at 511; see Gooden, 679 F. App'x at 964 ("[plaintiff] fails to establish a *prima facie* case because there is no evidence that a similarly situated individual outside her protected class was treated more favorably"). For the same reasons, that conduct does not, and cannot, "contribut[e]" to a single, continuing hostile work environment. Jones, 707 F. App'x at 647; see Harris, 82 F.4th at 1304 (affirming that "incidents [that are not] caused by [] race . . . shouldn't be considered as part of the hostile-work-environment calculus").[24]

At best, Trocano provides evidence "that [an] event occurred." Harris, 82 F.4th at 1304. But "discrimination is a comparative concept." Id. (quoting Lewis, 918 F.3d at 1223). "Without evidence that [the mask noncompliance advisory] was caused by discrimination, such as that similarly situated [] employees were treated differently, 'there's no way of knowing (or even inferring) that discrimination [was] afoot.'" Harris, 82 F.4th at 1304 (quo-

---

[24] Even if this Court considered all alleged conduct between December 2021 and February 2022, the result would not change. Trocano also "admits" (Doc. #90 p. 3) that she is "unaware of American treating any flight attendant removed from Colombia trips for lack of vaccination proof differently than she was treated" and that she "knows of no flight attendant who had not completed the training as of December 12, 2021[,] who was treated differently." (Doc. #88, p. 12.)

ting <u>Lewis</u>, 918 F.3d at 1223).  Trocano provides no such evidence. Thus, "she hasn't created a genuine dispute about whether the event was caused by her race."  <u>Harris</u>, 82 F.4th at 1304.

Therefore, as to Trocano's claims of Title VII Race Discrimination for Hostile Work Environment (Count 5) and Title VII Race Discrimination for Retaliation (Count 8) the motion for summary judgment is **GRANTED.**

Accordingly, it is now

**ORDERED:**

(1) Defendant American Airlines, Inc.'s Motion for Summary Judgment (Doc. #88) is **GRANTED.**

(2) The Clerk of Court is **DIRECTED** to enter judgment as follows:

    (a) In favor of Defendant American Airlines, Inc. as to Counts III and IV pursuant to the Opinion and Order (Doc. #68) granting American Airlines, Inc.'s Motion to Partially Dismiss (Doc. #9), and against Plaintiff Alaina Trocano, who shall take nothing;

    (b) In favor of Defendant American Airlines, Inc. as to Counts V, VI, VII, and VIII pursuant to the Opinion and Order (Doc. #99) granting American Airlines, Inc.'s Motion for Summary Judgment (Doc. #88), and against Plaintiff Alaina Trocano, who shall take nothing.

(3)    The Clerk of Court is further **DIRECTED** to terminate all

pending motions and deadlines and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this  28th  day of

May 2025.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record